UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

OCT 21 2025

Nathan Ochsner, Clerk of Court

CIVIL ACTION NO. _____

HOUHE ZENG,

Plaintiff,

v.

ALLIED TRUST INSURANCE COMPANY;
FIRE MARK INSURANCE AGENCY;
MATTHEW WHITE (*in his individual and official capacity*);
CASSIE BROWN (*in her individual and official capacity*);
GALVESTON COUNTY SHERIFF JAKE LINKEY (*in his individual and official capacity*);
TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICER A. SANCHEZ #16457 (*in his individual and official capacity*);
UTMB HEALTH;
CLEAR LAKE BEHAVIORAL HOSPITAL;
GALVESTON COUNTY;
CITY OF TEXAS CITY,

Defendants.

**\*\*DEMAND FOR JURY TRIAL\*\***

**TABLE OF CONTENTS (TOTAL 14 CHAPTERS)**

I. Parties, Jurisdiction, and Venue
II. Procedural Background and Judicial Inaction

*Zeng v. Allied Trust et. al on 42 U.S.C.*                                                                                  1

III. Factual Narrative and Chronology
IV. Section One: Insurance Bad Faith Denial
IV. Section Two: Consequential Damages and Public Harm
V. TDI Officials' Abuse of Authority and Defamation
VI. ATF Austin and DPS Unlawful Eviction and Seizure
VII. State Government Complicity and      Obstruction of Petition
VIII. UTMB and Clear Lake Unlawful Detention and Forced Medication
IX. Institutional Practices and Monell Liability
X. Preemptive Defenses and Exclusions
XI. Evidence Preservation and Discovery
XII. Damages
XIII. Prayer for Relief
XIV. Jury Demand

## I. PARTIES, JURISDICTION, AND VENUE

(Jurisdiction, Parties, and Venue)

1. Plaintiff Houhe Zeng (hereinafter "Plaintiff") is a resident of Texas, with relevant facts and damages primarily occurring within Texas City and Galveston County, Texas.

2. Defendant Allied Trust Insurance Company (hereinafter "Allied Trust") is the company that underwrote Plaintiff's homeowners' insurance policy; Defendant Fire Mark Insurance Agency (hereinafter "Fire Mark") is its agent.

3. Defendant Matthew White was an employee of the Texas Department of Insurance (TDI); Defendant Cassie Brown was the Commissioner of TDI, an administrative head appointed by the Governor.

4. Defendant Galveston County Sheriff Jake Linkey and Defendant Texas Department of Public Safety Officer A. Sanchez #16457 are law enforcement officers; Defendants UTMB Health and Clear Lake Behavioral Hospital are medical institutions.

5. Defendants Galveston County and Texas City are local governments, liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for their policies, customs, or failure to train.

6. This Court has federal question jurisdiction over this case (28 U.S.C. §1331; 42 U.S.C. §§1983, 1985, 1988) and civil rights jurisdiction (28 U.S.C. §1343(a)(3)); supplemental jurisdiction over state law bad faith denial and tort claims (28 U.S.C. §1367).

7. Venue is proper: The principal facts occurred within this Division (28 U.S.C. §1391(b)).

Procedural Safeguard Note: Plaintiff does not name the "State of Texas" as a defendant to avoid Eleventh Amendment sovereign immunity; state officials are sued in their individual capacity and, where necessary, official capacity.

## II. PROCEDURAL BACKGROUND AND JUDICIAL INACTION

(Procedural Background & Judicial Inaction)

8. Plaintiff previously filed Nos. 3:24-cv-224 and 3:24-cv-274 in 2024. Both cases were terminated on procedural grounds: the former for "lack of federal jurisdiction"; the latter for "failure to serve by a qualified third party." Neither case proceeded to substantive adjudication.

9. The aforementioned procedural dismissals do not constitute res judicata or final substantive effect (see Semtek), nor do they preclude this action based on new facts, new defendants, and a complete causal chain.

10. In the prior cases, Plaintiff filed multiple motions for consolidation and other significant motions; presiding Judge Jeffrey V. Brown made no substantive rulings or entries; he failed to respond to recusal motions (28 U.S.C. §455), jurisdiction and diversity assertions, objections to Clear Lake's "judicial arrest warrant" claim, and multiple proofs of service, preventing the cases from advancing to substantive review from the outset.

11. The Court failed to respond to Plaintiff's lawful jury demand (FRCP 38) and repeatedly refused to consolidate highly related cases, resulting in fragmented evidence and procedural deprivation.

12. To restore due process and jury trial rights, Plaintiff files this comprehensive civil rights action pursuant to FRCP 8 and 18, integrating continuing torts and conspiratorial conduct from 2021–2025.

(Procedural Safeguards and Due Process Statement)

13. To ensure this case receives a fair, impartial, and lawful adjudication, Plaintiff hereby declares as follows:

(1) Plaintiff has filed this action in compliance with all procedural requirements of the Federal Rules of Civil Procedure, specifically alleging facts, legal bases, and relief sought, and has duly completed the formal demand for jury trial (pursuant to Rule 38).

(2) Service of this Complaint will fully comply with Rule 4(c)(2), to be completed by a qualified third party, with attached Proof of Service. All Defendants' conduct and damages occurred within the Southern District of Texas, Galveston Division; this Court has complete subject-matter jurisdiction and personal jurisdiction.

(3) This case does not involve any state entity protected by Eleventh Amendment sovereign immunity. All state official Defendants are sued in their individual capacity and (where necessary) official capacity, consistent with the legal exception in Ex parte Young, 209 U.S. 123 (1908).

(4) Plaintiff has lawfully specified the manner of relief and scope of claims, fully complying with FRCP Rule 8(a).

(5) Plaintiff reminds this Court that if the Court refuses to accept jurisdiction lawfully, or engages in non-due process delays, obstructions, or dismissals due to political, administrative, or local factors, it will constitute a substantive violation of Plaintiff's Fourteenth Amendment Due Process Clause and Equal Protection Clause rights. Plaintiff respectfully notes that any dismissal or delay on purely procedural grounds, absent consideration of substantive rights, would effectively deny access to justice under the Due Process Clause.

(6) Plaintiff hereby reserves the right to file a formal Judicial Misconduct Complaint with the Judicial Conduct Committee of the United States Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. §§351–364 and will exercise such oversight authority if this case fails to receive lawful and fair adjudication.

(7) Plaintiff also reminds all Defendants and their counsel that any use of procedural delays, abuse of immunities, malicious misrepresentations, or

retaliatory litigation tactics to interfere with judicial fairness will constitute potential liability for abuse of process and obstruction of justice.

(8) Plaintiff requests that this Court strictly exercise its authority in accordance with the Constitution and federal statutes, ensuring this case is adjudicated before a jury based on evidence and law, without arbitrary denial of substantive justice through procedural or formalistic means.

### III. FACTUAL NARRATIVE AND CHRONOLOGY

(Factual Narrative & Chronology)

14. 2021/3/31 Protein Smoke Fire: Plaintiff's residence experienced low-temperature organic combustion (protein smoke fire), producing toxic and corrosive residues such as HCN, $NH_3$, PAHs. The Texas City Fire Department, due to lack of training, misjudged it as a general smoke incident.

15. 2021–2023 Claims Phase: Plaintiff submitted a claim to Allied Trust; Fire Mark refused supplemental submissions. Defendants denied the claim on the grounds that "pollution is not fire loss," deliberately misapplying policy coverage.

16. Fire Report Defects: The denial was based on an erroneous fire report (stating "no physical damage caused by smoke or fire"). The report was not reviewed or signed by Plaintiff; the subsequent reporting officer was terminated, and the fire department issued a written correction to "may cause odor." Allied/Fire Mark refused to adopt the update and rejected professional inspection (sending only a painter for 5–10 minutes).

17. TDI Intervention and Defamation: Plaintiff complained to TDI. Matthew White failed to investigate and instead forwarded false labels of "mental abnormality" and "threat"; Cassie Brown, as Commissioner, failed to supervise or halt this.

18. Alarm Attention and Law Enforcement Intervention (Early 2024): White maliciously labeled Plaintiff's documents as "threat," triggering Alarm Attention. DPS and Sheriff Jake Linkey intervened with monitoring and seized firearms under the guise of "safety check," without judicial warrant or emergency basis.

19. Medical Detention and Forced Medication (2024/1–2): Sheriff forcibly transported Plaintiff to UTMB under the pretext of "pre-scheduled doctor appointment," then transferred to Clear Lake Behavioral Hospital; Plaintiff was

detained without court order, subjected to forced medication and surveillance. The facility searched and seized writings and medications, allowing others to take them; Plaintiff was forced to exchange insurance card for release.

20. Debt Collection: Post-discharge, Plaintiff faced collection demands, with fees stemming from the unlawful detention's "coerced transaction," constituting unjust enrichment and secondary harm.

21. Forced Low-Price Sale and Community Harm: Due to denial and health risks, Plaintiff sold the house at a drastically reduced price to an out-of-state young family (via video viewing, full agent proxy). Plaintiff's agent disclosed the fire history, but Texas City refused public inspection and failed to inform of risks. Buyer's agent ignored strong odors and residues, with toxicity continuing to spread to the community.

22. Other Victim (Monica): Texas City resident Monica (single parent) was repeatedly subjected to the same pattern of detention by Sheriff/UTMB/Clear Lake, demonstrating an institutional pattern/practice.

23. Legislative Trend (SB 1362): Texas SB 1362 (anti-red flag) takes effect on 2025/9/1, reflecting state legislative rejection of warrantless firearm seizures and detentions; though not retroactive, it reveals that Defendants should have known their conduct violated the Constitution and public policy.

## IV. SECTION ONE: INSURANCE BAD FAITH DENIAL (ALLIED TRUST/FIRE MARK)

(Count I – Bad Faith Denial)

24. Defendants violated Texas Insurance Code §541.060(a)(2)(A) (denial without reasonable investigation), good faith duty, and common law bad faith denial.

25. Defendants knowingly used the erroneous fire report despite its correction, deliberately relying on the old version for denial; refused to dispatch qualified appraisers; refused to respond to inquiries from Jane Nelson's office; ignored Plaintiff's expert explanations and final site survey statements.

26. Due to the denial, Plaintiff was unable to decontaminate and repair, leading to property devaluation, health deterioration, emotional distress, and forced low-price sale triggering foreseeable community harm.

27. Plaintiff seeks compensatory damages, punitive damages, attorney fees and costs (42 U.S.C. §1988), and declaratory judgment.

## IV. SECTION TWO: CONSEQUENTIAL DAMAGES AND PUBLIC HARM

(Count II – Consequential & Public Harm)

28. If the insurance company had reasonably investigated and performed, and local government had lawfully inspected and informed, the subsequent forced low-price sale and community pollution could have been avoided; Defendants foresaw these consequences.

29. Defendants' conduct caused widespread public harm, warranting punitive damages for deterrence.

## V. TDI OFFICIALS' ABUSE OF AUTHORITY AND DEFAMATION (MATTHEW WHITE/CASSIE BROWN)

(Count III – Abuse of Authority & Civil Rights Conspiracy)

30. Matthew White used public authority to defame with "threat" and label "mental abnormality," maliciously forwarding to trigger Alarm Attention, leading to law enforcement and medical units' warrantless detention and seizure.

31. Cassie Brown knew or should have known of subordinate abuse, failed to supervise or correct, allowing denial and cover-up, constituting supervisory liability for unconstitutional inaction.

32. The above conduct constitutes 42 U.S.C. §1983 (deprivation of due process and liberty under color of state law) and §1985(3) (civil rights conspiracy).

33. Plaintiff seeks compensatory and punitive damages; declaration of unconstitutionality; and injunction prohibiting further use of internal markings or defamation to obstruct public complaints.

## VI. ATF AUSTIN/DPS UNLAWFUL EVICTION AND SEIZURE

(Count IV – Warrantless Seizure & Expulsion)

34. ATF Austin and DPS, based on Alarm Attention, conducted warrantless intrusion, seized lawful firearms, issued "warning letters," and evicted, without judicial authorization, imminent danger, or criminal nexus, violating the Fourth Amendment.

35. Restricting residence and personal liberty via administrative letters or oral directives constitutes ultra vires and Fourteenth Amendment due process violation.

36. Plaintiff seeks compensatory and punitive damages; declaration of unconstitutionality; and permanent injunction prohibiting substitution of secret markings for judicial process.

## VII. STATE GOVERNMENT COMPLICITY AND OBSTRUCTION OF PETITION

(Count V – State-Level Complicity, Petition Obstruction & Intimidation)

37. Plaintiff repeatedly petitioned the Governor's Office and TDI. Cassie Brown evaded throughout, with the office refusing meetings or submissions as "it's impossible"; complaints went unanswered long-term.

38. After scheduling a Governor meeting with formal confirmation, on the day, Governor's Office staff/security informed: "The Governor may not see you; if you come directly, the police will kill you." This non-metaphorical warning created a chilling effect, violating First Amendment petition rights and personal safety.

39. Simultaneously, state capitol security evicted and restricted crossing barriers via administrative directive, without judicial authorization or risk assessment, constituting overreach and unconstitutionality.

40. The above echoes TDI's complaint closures and defamatory forwards, forming coordinated actions of obstructing relief and institutional intimidation,

*Zeng v. Allied Trust et.al on 42 U.S.C.*                                                      8

violating §§1983, 1985, and the First, Fourth, and Fourteenth Amendments.

## VIII. UTMB AND CLEAR LAKE UNLAWFUL DETENTION, FORCED MEDICATION, AND FINANCIAL EXTORTION

(Count VI – Unlawful Medical Detention & Coerced Payment)

41. Incident Origin: On August 20, 2024, around 2:00 PM, Sheriff Jake Linkey and his deputies, upon receiving a UTMB alert, went to Plaintiff's residence at 7919 Quartz Ln, Texas City, TX 77591. Upon arrival, they induced Plaintiff to enter the vehicle for transport to UTMB under the pretext of "pre-scheduled doctor appointment." Plaintiff, not proficient in English and with no psychiatric treatment record or history, failed to understand this as a prelude to detention.

42. Fraudulent Detention and Procedural Deficiencies: Upon arrival at UTMB, Plaintiff was immediately deprived of personal liberty and transferred to Clear Lake Behavioral Hospital without any judicial authorization or medical necessity assessment; during this, bags and all personal items were seized, communications severed, preventing contact with family or counsel. Such inducement by fraud followed by detention constitutes fraudulent and unlawful detention, violating Texas Health and Safety Code Chapter 573 and the Fourth and Fourteenth Amendments.

43. Unlawful Detention and Forced Medication: At Clear Lake, Plaintiff was compelled to take psychiatric medications and subjected to continuous surveillance. Whenever Plaintiff refused medication or objected, the facility used violence to suppress and force-feed, without any court order, emergency medical basis, or risk assessment report.

44. Search, Seizure, and Violent Suppression: During detention, facility staff

conducted multiple searches under "safety check" pretext, seizing all writings, medications, and personal items. Plaintiff's complaints and hunger strikes were ineffective; the facility maintained detention with forced feeding and physical suppression while continuing surveillance.

45. Detention Purpose and Nature: The aforesaid forced medication, violent suppression, ineffective hunger strikes, ineffective complaints, continuous surveillance, and item seizures indicate the detention was not for medical purposes but to achieve silencing and control, severely violating personal liberty and due process protections.

46. Financial Extortion and Coerced Transaction: Plaintiff was forced to exchange insurance card as a condition for release; the hospital subsequently billed the insurer and collected fees. Post-discharge, Plaintiff faced debt collection demands for these fees, constituting financial extortion and unjust enrichment, violating property rights and procedural justice.

47. Continuing Harm and Legal Basis: The above conduct caused Plaintiff long-term emotional trauma, reputational harm, and economic pressure; violating the Fourth and Fourteenth Amendments and Youngberg v. Romeo, 457 U.S. 307 (1982). And due to interactions with Sheriff/DPS/TDI, constituting §1985 conspiracy.

48. Relief Sought: Plaintiff requests judgment against UTMB and Clear Lake and related personnel for compensatory and punitive damages for unlawful detention, forced medication, violent suppression, and financial extortion; declaration of unconstitutionality; and issuance of permanent injunction prohibiting similar conduct without judicial authorization; and ordering Defendants to bear litigation costs and attorney fees (42 U.S.C. §1988).

## IX. INSTITUTIONAL PRACTICES AND MONELL LIABILITY

(Count VII – Monell Liability: Policy / Custom / Failure to Train)

49. Local Policies and Customs: Texas City and Galveston County have long-standing deficiencies in training and supervision. Fire, sheriff, and medical units lack standard operating guidelines for handling protein smoke fires and

mental detentions, leading to repeated errors.

50. Fire and Insurance System Failures: Texas City Fire Department failed to classify and detect toxins per NFPA 921; the erroneous report was adopted by insurance companies and state insurance department, becoming an institutionalized result of denial and truth cover-up.

51. Law Enforcement and Medical Coordinated Abuse: Galveston County Sheriff's Office and UTMB, Clear Lake, etc., medical units formed habitual cooperative patterns: substituting administrative markings for judicial orders, detaining citizens under medical pretexts. Monica's case proves this pattern's continuity and foreseeability.

52. Municipal Evasion and Local Cover-Up: Plaintiff repeatedly reported fire training deficiencies, public safety risks, and community pollution impacts to Texas City government and city council. The government failed to investigate or hold hearings, instead issuing a written "warning letter" through city-appointed counsel, stating "this is a private insurance dispute unrelated to the government," and using intimidating language to deter accountability. This conduct constitutes institutional inaction and petition interference.

53. Extension of Institutional Cover-Up: The aforesaid evasion and interference, combined with TDI, insurance companies, medical institutions, and law enforcement departments' derelictions, form systemic concealment, depriving the public and Plaintiff of relief avenues.

54. Legal Basis: Under Monell, local governments are liable for their policies, customs, or failure to train; the refusals to investigate, intimidating letters, and long-term cover-ups in this case constitute policy-level inaction, forming institutional unconstitutionality.

55. Relief Sought: Request declaration that Texas City and Galveston County bear joint and several liability for damages caused by their policies and customs, and order improvements to fire training, public safety reviews, and citizen petition processing procedures.

## X. PREEMPTIVE DEFENSES AND EXCLUSIONS

(Pleading Around Common Defenses)

56. Qualified Immunity Exclusion: Individual Defendants' conduct violated clearly established rights: (1) Prohibition of warrantless searches and detentions (Fourth Amendment); (2) Deprivation of liberty without due process (Fourteenth Amendment); (3) Obstruction of petition and speech freedoms

(First Amendment). See Hope v. Pelzer, 536 U.S. 730 (2002); Taylor v. Riojas, 592 U.S. ___ (2020).

57. Sovereign Immunity: The "State of Texas" is not named as a defendant; state officials are sued in individual capacity for §§1983/1985, and in official capacity only for prospective injunctive relief, consistent with Ex parte Young, 209 U.S. 123 (1908).

58. Duplicative Litigation and Res Judicata: Prior cases were terminated procedurally without substantive review; this case integrates new facts and new defendants as a new action, with clear demarcation of claim scopes.

59. Statute of Limitations: Incorporated under continuing violation and delayed discovery doctrines; 2021–2025 conduct has continuous and conspiratorial nature.

60. Service: This case will comply with FRCP 4(c)(2) via qualified third-party service, preserving proofs of service; extensions or alternative service may be requested if necessary.

61. Venue/Jurisdiction: Principal facts, Defendants, and damages are within this Division; out-of-district conduct (e.g., ATF Austin coordination) has close causal ties to local events.

62. SB 1362 Application: Not as an independent cause of action, but as evidence of legislative trends and Defendants' malice (knew or should have known), supplementing "clearly established" and public policy directions.

## XI. EVIDENCE PRESERVATION AND DISCOVERY

(Preservation & Discovery Requests)

63. Evidence Preservation: Request Court order for all Defendants to immediately preserve: emails, communication records, complaint files, all versions of fire reports, CCTV, Body Cam, recordings, medical records, financial bills and collection records, personnel files.

64. Document Requests (Rule 34): (1) Allied Trust/Fire Mark and TDI (including White/Brown) correspondences; (2) DPS and Sheriff action orders, reports; (3) UTMB/Clear Lake admission/discharge, medication, restrictions, item lists; (4) Texas City public inspection/denial records; (5) Anonymized statistics and procedural records for Monica and similar cases.

65. Third-Party Subpoenas (Rule 45): Issue subpoenas to buyer's agent, debt collection companies, fire department correction report authors, Governor's Office security department, etc., for data retrieval.

## XII. DAMAGES

(Damages)

66. Economic Losses: House repair and decontamination costs, medical fees, relocation and short-term rental expenses, lost income, debt collection and attorney fees, house devaluation and low-price sale differential.
67. Non-Economic Losses: Emotional distress, harm to personality and reputation, fear and anxiety, diminished quality of life.
68. Punitive Damages: For malicious defamation, warrantless detention, exchange of insurance card for freedom, refusal to supervise, and intimidation of petitions, etc., request punitive damages against individual Defendants and private entities (including Allied Trust, Fire Mark, UTMB, Clear Lake); Plaintiff does not seek punitive damages against Texas City and Galveston County.
69. Attorney Fees and Costs: Pursuant to 42 U.S.C. §1988.

Health and Vocational Damages

70. Plaintiff and family members resided long-term in the contaminated environment post-protein smoke fire, exposed to highly toxic compounds such as cyanide, ammonia, and polycyclic aromatic hydrocarbons, ultimately losing sense of smell (anosmia).
71. Plaintiff and relatives are engaged in foods supply -related industries, where olfactory function is a core vocational ability. Loss of smell renders Plaintiff and relatives unable to continue original work, leading to complete career interruption and loss of income sources.
72. This health damage also inflicts devastating impacts on daily life, including loss of taste, eating disorders, long-term anxiety, social withdrawal, and severe decline in quality of life.
73. The aforesaid loss of smell and its direct consequences constitute permanent physical and vocational impairment, forming part of non-economic damages and future economic losses, for which Defendants bear joint and several liability.

## XIII.PRAYER FOR RELIEF

(Prayer for Relief)

Monetary Damages and Statutory Relief

74. Plaintiff requests award of compensatory damages (including all economic and non-economic damages), not less than $2,500,000 USD, with exact amount determined by jury based on evidence;

75. Against individual Defendants and private entities (including Allied Trust Insurance Company, Fire Mark Insurance Agency, UTMB Health, Clear Lake Behavioral Hospital), request punitive damages, amount determined by jury, sufficient for warning and deterrence;

76. For insurance bad faith denial claims, pursuant to Texas Insurance Code §541.152, request statutory damages (including possible trebling) and reasonable attorney fees and costs;

77. Pursuant to 42 U.S.C. §1988, request reasonable attorney fees and litigation costs;

78. Award pre- and post-judgment interest, litigation costs, and other monetary relief the Court deems just and proper;

79. Plaintiff reserves the right to further supplement with evidence, specify in subsequent proceedings, and request higher amounts.

80. Adjudge all Defendants jointly or severally violated Plaintiff's constitutionally protected rights (First, Fourth, Fourteenth Amendments; 42 U.S.C. §§1983, 1985).

81. Order Allied Trust and Fire Mark to pay all compensatory and punitive damages (including all economic/non-economic losses caused by denial).

82. Plaintiff does not assert punitive damages against Texas City and Galveston County, but requests the Court order both Defendants, under Monell principles, to bear compensatory damages, declaratory and injunctive relief liability for damages caused by their policies, customs, and supervisory failures; and order TDI (Brown/White), Sheriff/DPS, UTMB/Clear Lake, etc., Defendants to bear compensatory and (where applicable) punitive damages according to their conduct and scope of liability.

83. Declare "Alarm Attention"-type secret markings, warrantless seizures and evictions, obstruction of petitions and intimidation, etc., unconstitutional and prohibit them; issue permanent injunction prohibiting searches, seizures, detentions, and forced medication without judicial authorization, and require local governments to establish protein fire training and public inspection procedures; and award costs, attorney fees, interest, and other relief the Court deems just and equitable.

## XIV. JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable pursuant to FRCP 38.

Plaintiff hereby demands trial by jury on all issues so triable.

/s/ *HouHe Zeng*
Plaintiff: Houhe Zeng

Address: 3002 Arbor Edge Crossing, La Marque, TX 77568
Telephone: 832-523-5003
Email: Jts990616@gmail.com

Date: October 21, 2025

## Exhibit List (Index of Supporting Evidence)

- Exhibit A – Texas City Fire Report (Corrected Version)

- Exhibit B – Allied Trust Denial Letter & Communications

- Exhibit C – TDI Complaint Correspondence (White/Brown)

- Exhibit D – UTMB & Clear Lake Admission Records

- Exhibit E – Photographs & Environmental Test Reports

- Exhibit F – Medical Diagnoses (Anosmia)

- Exhibit G – Legislative Material (Texas SB 1362)